## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **DAVID RAUL AS CUSTODIAN FOR PINCHUS E. RAUL UTMA NY** | )  CASE NO.: |
| | ) |
| 1025 E 32ND STREET BROOKLYN, NY 11210-4130 | ) |
| | ) |
| On Behalf of Himself and All Others Similarly Situated and Derivatively On Behalf of FERRO CORPORATION, | )  JUDGE: |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **RICHARD J. HIPPLE** C/O CT CORPORATION SYSTEM 1300 EAST NINTH STREET CLEVELAND, OH 44114 | ) |
| | ) |
| **JENNIE  S. HWANG** C/O CT CORPORATION SYSTEM 1300 EAST NINTH STREET CLEVELAND, OH 44114 | ) |
| | ) |
| **WILLIAM B.  LAWRENCE** C/O CT CORPORATION SYSTEM 1300 EAST NINTH STREET CLEVELAND, OH 44114 | ) |
| | ) |
| **TIMOTHY K. PISTELL** C/O CT CORPORATION SYSTEM 1300 EAST NINTH STREET CLEVELAND, OH 44114 | ) |
| | ) |
| **SANDRA  AUSTIN** C/O CT CORPORATION SYSTEM 1300 EAST NINTH STREET CLEVELAND, OH 44114 | ) |
| | ) |
| **RICHARD C. BROWN** C/O CT CORPORATION SYSTEM 1300 EAST NINTH STREET CLEVELAND, OH 44114 | ) |

**GREGORY E. HYLAND**   )
C/O CT CORPORATION SYSTEM   )
1300 EAST NINTH STREET   )
CLEVELAND, OH 44114   )
      )
**PETÉR T. KONG**   )
C/O CT CORPORATION SYSTEM   )
1300 EAST NINTH STREET   )
CLEVELAND, OH 44114   )
      )
**RONALD P. VARGO**   )
C/O CT CORPORATION SYSTEM   )
1300 EAST NINTH STREET   )
CLEVELAND, OH 44114   )
      )
      Defendants,   )
      )
      -and-   )
      )
**FERRO CORPORATION**   )
C/O CT CORPORATION SYSTEM   )
1300 EAST NINTH STREET   )
CLEVELAND, OH 44114   )
      )
      Nominal Defendant.   )

## VERIFIED SHAREHOLDER CLASS AND DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT AND CORPORATE WASTE

Plaintiff, David Raul as Custodian for Pinchus E. Raul UTMA NY, by his attorneys, alleges on information and belief, except for his own acts, which are alleged on knowledge, as follows:

### INTRODUCTION

1.    This is a shareholder class and derivative action brought by plaintiff on behalf of Ferro Corporation ("Ferro" or the "Company") and its public shareholders against Ferro's Board of Directors (the "Board"), arising out of their breaches of fiduciary duty in connection with their

2

failure to negotiate in good faith with potential purchasers for the Company and pursue a transaction designed to maximize shareholder value. This action seeks equitable relief only.

2.     On February 13, 2013, A. Schulman, Inc. ("A. Schulman"), a global paper and packaging company, submitted a letter to Ferro pursuant to which A. Schulman expressed a strong interest in acquiring the Company. After swift dismissal from the Board, A. Schulman publically reiterated its proposal on March 4, 2013, offering to acquire the Company for $6.50 per share, including an immediate cash payment of $3.25 for each Ferro share outstanding and $3.25 worth of A. Schulman common stock (the "Offer"). The Offer represents a 25 percent premium over the closing price of Ferro common stock on March 1, 2013, and a 32 percent premium over the volume-weighted average trading price over the preceding 60-day period.

3.     Rather than making a concerted effort to present Ferro stockholders with a full and fair opportunity to maximize their investment in the Company, defendants refused to negotiate with A. Schulman or open up a broader sales process to secure competing bids for the Company that would maximize shareholder value. The Board has done so to preserve their own positions, and to serve the interests of other Company insiders. Indeed, as described in more detail below, the Board members receive very lucrative payments in connection with their services as directors, with each Board member receiving at least $130,982 in 2011.

4.     Instead of negotiating in good faith with A. Schulman, the Board has chosen to utilize onerous and preclusive defensive measures such as having a staggered board to ward off all potential bidders in order to preserve their positions at the Company. Through the use of a staggered board defendants have interposed between shareholders and competing bidders, precluding shareholders from deciding whether to accept offers for their interests in the Company.

5.     The law imposes upon defendants the obligation to act in the best interests of Ferro and its public stockholders and ensure that no conflicts of interest exist between defendants' own interest and their fiduciary obligations to act in good faith.  Defendants must immediately terminate their refusal to protect and advance the interests of Ferro and its public shareholders, to whom the defendants owe the highest duty known to the law, by, among other things: (i) declassifying the staggered board; and (ii) providing shareholders with a fair process by setting up a committee of truly independent directors to examine the strategic alternatives available to the Company and take decisive action to maximize Company and shareholder value.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states (and foreign states) and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiff is a citizen of New York and no defendant is a citizen of New York.

7.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8.     Venue is proper in this district because nominal defendant Ferro is incorporated and headquartered in this district.

## PARTIES

9.     Plaintiff, David Raul, has, at all relevant times, been the owner of Ferro common stock.

10.     Nominal party Ferro is an Ohio corporation, headquartered at 6060 Parkland Blvd Mayfield Heights, Ohio 44124. Ferro, together with its subsidiaries, produces and sells specialty materials and chemicals in the United States and internationally.

11. Defendant Sandra Austin ("Austin") has been a director of the Company since 1994. Upon information and belief, Austin is a citizen of Georgia.

12. Defendant Richard C. Brown ("Brown") has been a director of the Company since 2009. Upon information and belief, Brown is a citizen of Virginia.

13. Defendant Richard J. Hipple ("Hipple") has been a director of the Company since 2007. Upon information and belief, Hipple is a citizen of Ohio.

14. Defendant Jennie S. Hwang ("Hwang") has been a director of the Company since 2001. Upon information and belief, Hwang is a citizen of Ohio.

15. Defendant Gregory E. Hyland ("Hyland") has been a director of the Company since 2009. Upon information and belief, Hyland is a citizen of Georgia.

16. Defendant Peter T. Kong ("Kong") has been a director of the Company since 2012. Upon information and belief, Kong is a citizen of California.

17. Defendant William B. Lawrence ("Lawrence") has been a director of the Company since 1999. Upon information and belief, Lawrence is a citizen of Ohio.

18. Defendant Timothy K. Pistell ("Pistell") has been a director of the Company since 2010. Upon information and belief, Pistell is a citizen of Ohio.

19. Defendant Ronald P. Vargo ("Vargo") has been a director of the Company since 2009. Upon information and belief, Vargo is a citizen of Ohio.

20. Defendants referenced in the foregoing paragraphs are collectively referred to as Individual Defendants and/or the Ferro Board.

## DEFENDANTS' FIDUCIARY DUTIES

21.     By reason of their positions with the Company as officers and/or directors, the Individual Defendants owe fiduciary duties to Ferro and its public stockholders, including duties of good faith, fair dealing, loyalty and full, candid and adequate disclosure.

22.     As corporate directors, defendants are required to act in good faith, in the best interests of a corporation's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the Company is presented potential value-maximizing strategic alternatives, directors are required to take all steps reasonably required to properly evaluate such alternatives and choose the alternative that is in the best interests of the Company and its shareholders. To comply with this duty, the directors of a corporation may not engage in a number of prohibited activities, including, without limitation, actions that:

(a) adversely affect the value provided to the corporation's shareholders;

(b) contractually prohibit the directors from complying with or carrying out their fiduciary duties;

(c) discourage or inhibit offers to purchase the corporation or its assets; or

(d) will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

23.     In accordance with their duties of loyalty and good faith, the Individual Defendants as directors of Ferro, are obligated to refrain from:

(a) participating in any act or transaction where the directors' loyalties are divided;

(b) using their positions of control to harm the Company or extract personal financial benefits not equally shared by the public shareholders of the corporation;

(c) unjustly entrenching or enriching themselves at the expense or to the detriment of the Company's public shareholders; and/or

(d) unjustly entrenching or enriching themselves as directors of the Company by failing to give good faith consideration to potential value-maximizing alternatives for the Company and its shareholders.

24.     The Individual Defendants, separately and together, have violated the fiduciary duties owed to plaintiff and the other public shareholders of the Company, including their duties of loyalty, good faith, candor, and independence, insofar as they have refused to give good faith consideration to value-maximizing opportunities for the Company.

25.     As a result of their failure to consider value maximizing alternatives in good faith, the Individual Defendants, as a matter of law, have breached their fiduciary duties of good faith and fair dealing owed to the Company and its shareholders.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on his own behalf and as a class action on behalf of all holders of Ferro stockholders who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

27.     This action is properly maintainable as a class action.

28.     The Class is so numerous that joinder of all members is impracticable. As of March 15, 2013, there were over 86.56 million shares of Ferro common stock outstanding.

29.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia,* the following:

(a) whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class;

(b) whether the Individual Defendants are engaging in self dealing;

(c) whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of Ferro;

(d) whether the Individual Defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with their rejection and refusal to consider in good faith the Offer, including the duties of good faith, diligence, candor and fair dealing;

(e) whether the Individual Defendants, in bad faith and for improper motives, have erected or improperly maintained barriers to discourage offers for the Company or its assets; and

(f) whether Plaintiff and the other members of the Class would suffer irreparable injury if the Individual Defendants continue following their current course of action.

30.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

31.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

32.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

8

33.    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

34.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## DERIVATIVE ALLEGATIONS

35.    Plaintiff also brings this action derivatively in the right and for the benefit of Ferro, to redress injuries that have been suffered and are continuing to be suffered by Ferro as a direct result of the defendants' violations of law. Ferro is named as a nominal party in this derivative action solely in a derivative capacity.

36.    Plaintiff will adequately and fairly represent the interests of Ferro in enforcing and prosecuting its rights, and has retained counsel experienced and competent in litigating complex actions and shareholder litigation.

37.    Plaintiff is an owner of Ferro stock and was an owner of Ferro stock during times relevant to defendants' illegal and wrongful course of conduct alleged herein.

38.    Any demand made by plaintiff to the Ferro Board to institute this action is excused. Based on all the allegations in this Complaint and the Individual Defendants' actions to date, including their repeated acts of entrenchment, including refusal to protect the interests of Ferro and its shareholders by responding in good faith to value-maximizing alternatives for the Company, such demand would be a futile and useless act. The Board consists of nine directors, all of whom are defendants to the action. These defendants maintain complete voting control over any decisions required to be made by the Board, including any action to be taken in

response to a demand made by shareholders. Each member of the Board has directly participated in the wrongs complained of herein, which disables them from acting independently, objectively or in good faith to advance the interests of Ferro or respond to a demand by shareholders. The Board is not disinterested or independent as detailed herein and set forth below:

(a) Each of the Individual Defendants served on the Ferro Board during the relevant period and, as Board members, each was charged with oversight and operation of the Company and the conduct of its business affairs. Each of the Individual Defendants has breached the fiduciary duties owed to Ferro and its shareholders by, among other things, failing to take reasonable steps to maximize shareholder value, failing to consider in good faith value-maximizing alternatives for the Company and/or advancing their own interests and/or those of senior Ferro management at the expense of and to the detriment of Ferro and its public stockholders.

(b) Instead of acting in the best interest of Ferro, the Board acted to protect and promote their personal interests and ensure themselves ongoing control over Ferro and thereby ensure their continued ability to receive the benefits of their positions as directors of Ferro.

(c) The Company's non-employee directors receive very lucrative compensation for their role as directors. The table below, contained in the Def 14A Annual Proxy Statement filed by the Company with the United States Securities and Exchange Commission (the "SEC") on March 28, 2012 describes the compensation package non-employee directors received in 2011[1]:

---

[1] All Defendants with the exception of Kong are represented in this table.  Kong is not represented as he did not join the Board until 2012.

### Directors' Compensation Table

| Name | Fees | | | Deferred Stock Units[2] | | Total |
|---|---|---|---|---|---|---|
| | Paid In | Deferred[1] | Total Fees | Number of | Value[3] | |
| | $ | $ | $ | Shares | $ | $ |
| Sandra Austin | 0 | 65,000 | 65,000 | 4,200 | $ 65,982 | $130,982 |
| Richard C. Brown | 65,000 | 0 | 65,000 | 4,200 | $ 65,982 | $130,982 |
| Richard J. Hipple | 85,000 | 0 | 85,000 | 4,200 | $ 65,982 | $150,982 |
| Jennie S. Hwang | 65,000 | 0 | 65,000 | 4,200 | $ 65,982 | $130,982 |
| Gregory E. Hyland | 65,000 | 0 | 65,000 | 4,200 | $ 65,982 | $130,982 |
| William B. Lawrence | 85,000 | 0 | 85,000 | 4,200 | $ 65,982 | $150,982 |
| Timothy K. Pistell | 65,000 | 0 | 65,000 | 4,200 | $ 65,982 | $130,982 |
| Ronald P. Vargo | 85,000 | 0 | 85,000 | 4,200 | $ 65,982 | $150,982 |

(d) The Individual Defendants have acted to ensure that they continue to receive the substantial financial benefits and perquisites provided to them as directors of Ferro.

(e) Because the Board has taken defensive measures to fend off potential offers to purchase the Company, their defensive actions are subject to enhanced judicial scrutiny because of the omnipresent specter that the Individual Defendants may be acting in their own interests rather than the interests of the Company and its shareholders.

(f) In taking unreasonable defensive measures, the Individual Defendants demonstrated that their primary purpose in doing so was to retain control of the Company. Under such circumstances, there is more than reasonable doubt as to the disinterestedness and independence of the Board, thus making demand futile.

11

(g) As more fully detailed herein, the Individual Defendants participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Ferro's shareholders or recklessly and/or knowingly disregarded the wrongs complained of herein. Its members are, therefore, not disinterested parties.

39.     The Individual Defendants named herein have not exercised and cannot exercise independent or objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because they have participated in and/or acquiesced to the misconduct alleged herein.

40.     The Board has demonstrated its unwillingness to act in compliance with federal or state law or sue themselves and/or their fellow directors and allies in the top ranks of the corporation for failure to do so, as they have developed professional relationships with their fellow Board members who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action. Certain members of the Board also have longstanding business relationships outside of their work at the Company. Since 2006, Defendant Hipple has been the Chairman of the Board, President and Chief Executive Officer of Materion Corporation, where Defendant Lawrence has served as a director since 2003. Additionally, Defendant Lawrence and Defendant Vargo served together as TRW Inc.'s Executive Vice President, General Counsel and Secretary, and Corporate Treasurer and Vice President of Investor Relations, respectively, with both resigning from their positions in 2003.

41.     The Individual Defendants have shown their interests to be antagonistic to Ferro and this lawsuit as they have refused to consider in good faith options to maximize shareholder value for Ferro and its shareholders. The Individual Defendants have not and will not authorize a suit against themselves as such a suit would require them to expose themselves to millions of dollars in personal liability to Ferro.

42.     The underlying misconduct of the Individual Defendants is not a product of a valid exercise of business judgment, and cannot be properly ratified by the Board.

## SUBSTANTIVE ALLEGATIONS

43.     Ferro together with its subsidiaries, produces and sells specialty materials and chemicals in the United States and internationally. It operates in six segments: Performance Coatings, Electronic Materials, Color and Glass Performance Materials, Polymer Additives, Specialty Plastics, and Pharmaceuticals. The Company provides electronic, color, and glass materials, including conductive metal powders, polishing materials, glazes, enamels, pigments, decoration colors, and other performance materials. It also offers polymer and ceramic engineered materials, such as polymer additives, engineered plastic compounds, pigment dispersions, glazes, frits, porcelain enamel, pigments, inks, and high-potency pharmaceutical active ingredients. The Company's products have a range of applications in various markets, such as appliances, automobiles, building and renovation, electronics, household furnishings, industrial products, packaging, and pharmaceuticals.

### *The Offer*

44.     A. Schulman is an international supplier of designed and engineered compounds, color concentrates, resins, and size reduction services, which are used in a variety of consumer, packaging, industrial, and automotive applications.

13

45.    On February 13, 2013, several months after initiating contact with Ferro in November 2012, A. Schulman sent a letter to the Board, pursuant to which A. Schulman expressed a "strong intent" in acquiring the Company. As stated in a March 4, 2013 A. Schulman press release discussing the matter: "A. Schulman expressed its 'strong intent' in pursuing the combination in a letter to Ferro on February 13, 2013.  Ferro's Board rejected A. Schulman's offer and expressed their belief that the company should remain independent. A. Schulman first contacted Ferro in November 2012."

46.    In the same March 4, 2013 press release, A. Schulman reiterated their interest in acquiring the Company, directly making their offer to the Company's shareholders. The Offer proposed A. Schulman's acquiring the Company for $6.50 per share, including an immediate cash payment of $3.25 for each Ferro share outstanding and $3.25 worth of A. Schulman common stock. The Offer represents a 25 percent premium over the closing price of Ferro common stock on March 1, 2013, and a 32 percent premium over the volume-weighted average trading price over the preceding 60-day period.

47.    The March 4, 2013 press release also detailed the reasons for which A. Schulman believed the Offer to be in the best interests of Ferro's shareholders and for which the Board should reconsider their hasty decision. Amongst other things, A. Schulman cited factors such as an estimated annual savings of $35 million over Ferro's stated targets, A. Schulman's proven ability to successfully execute reorganization, growth and acquisitions, and forecasted substantial synergies, geographic and market growth opportunities. The press release stated in part:

> "A. Schulman and Ferro are both recognized leaders in specialty chemicals with value-added product lines, similar business models, complementary competencies, markets and applications," said Joseph M. Gingo, Chairman, President and Chief Executive Officer of A. Schulman. "We believe our combination will deliver superior value to our respective shareholders and offer

better value to customers, and we would welcome the opportunity to engage in a mutually beneficial dialogue with Ferro's Board and management."

Gingo added, "A. Schulman has demonstrated a proven ability to execute reorganization, growth and acquisitions. Ferro's business units align with A. Schulman's core competencies with the exception of Pharmaceuticals, which is not strategic to us. We see substantial synergies and both geographic and market growth opportunities resulting from this compelling combination, which we would hope to be a consensual transaction."

**A. Schulman Financial Strength to Propel Accelerated Growth, Value Creation**
"We have tremendous respect for Ferro and its people," said Gingo. "However, cash flow is required not only for the restructuring efforts already publicly identified by Ferro, but also for growth, the capacity to be opportunistic in the marketplace, and the ability to create value for shareholders."

Over the past five years, A. Schulman has generated more than $400 million in free cash flow. By comparison, Ferro has generated approximately $60 million during that same period.

Gingo added, "A. Schulman's ability to generate strong free cash flow and its successful track record of integrating acquisitions and recognizing synergies ahead of schedule will help to accelerate and improve Ferro's value creation timeline. We also believe that incorporating Ferro's products and technologies into our corporate growth strategies, which focus on adjacent markets, new products and technologies, and cross-selling will provide a powerful platform to enable profitable and sustainable growth and ensure long-term, enhanced shareholder value."

Since adopting a strategy in 2008 to move to higher-margin businesses and exit low-margin businesses, A. Schulman has successfully executed consolidations, restructurings and acquisition synergies that have been beneficial to the Company over the past five years. For example, with the 2010 acquisition of ICO, Inc., the Company achieved $15 million of synergies one year ahead of schedule.

Gingo estimated that the acquisition of Ferro would provide annual synergies of $35 million - including consolidation of corporate offices, integration of the plastics business, pricing and sourcing efficiencies, cross selling and value selling - in addition to Ferro's previously announced projected savings of $50 million.

"In addition to the near-term synergies and potential restructuring efficiencies, the long-term benefits to A. Schulman and Ferro shareholders include substantially enhanced returns on invested capital and further growth in higher-margin business segments and global markets. We expect the proposed transaction to be accretive in the first year following the acquisition.

"Accordingly, we request the Ferro Board reconsider their expressed position to remain independent. We also encourage Ferro shareholders to communicate with their Board, and ask them to re-examine their decision regarding our offer. We believe that our offer will bring attractive and timely value creation to both Ferro and A. Schulman shareholders," stated Gingo.

48. A. Schulman further explained their belief that the Offer is in the best interests of the Company's shareholders through a presentation filed with the SEC along with the press release. This presentation included facts such as companies' comparative stock price, as well as the 30% increase the Offer's announcement sparked in the Company's stock:



49. Additionally, the presentation detailed A. Schulman's consistent positive cash flow, a factor much needed for growth and expansion, and a factor which has proved troublesome for the Company in recent years amidst declining sales and net income:



50.   Lastly, the presentation highlighted the similar markets shared by A. Schulman and the Company, as well as the spheres in which effective cost synergies could occur:



## Restructuring Targets



When cost savings and synergies are fully implemented, SHLM estimates annual savings of $35M over and above previously announced FOE targets

Source: FOE press release on February 6, 2013 and SHLM internal estimates

16   OPEN HONEST LISTEN ACCOUNTABLE

### *The Board Rejects the Offer*

51.    Despite these compelling reasons to explore a potential sale of the Company, on March 7, 2013, only three weeks after A. Schulman's first letter to the Board, and three days after A. Schulman's public Offer proposal, and without engaging in any substantive dialogue with A. Schulman, the Board summarily rejected A. Schulman's offer.  Specifically, on March 7, 2013, the Board issued a press release asking shareholders to take no action regarding the Offer, and stating:

> **FERRO CONFIRMS PRIOR RECEIPT AND REJECTION OF UNSOLICITED PROPOSAL FROM A. SCHULMAN**
> *Advises Shareholders to Take No Action at This Time*
> **CLEVELAND, Ohio – March 4, 2013 –** Ferro Corporation (NYSE: FOE, the "Company") today confirmed that its Board of Directors had previously received and rejected an unsolicited proposal from A. Schulman, Inc. (Nasdaq: SHLM) to acquire all of the outstanding shares of Ferro common stock for $6.50 per share in cash and stock.

Ferro's Board of Directors, in consultation with financial and legal advisors, unanimously determined that the A. Schulman proposal is not in the best interests of Ferro shareholders and that continued execution of the Company's value creation strategy will deliver greater value to Ferro shareholders.

Ferro advises shareholders to take no action at this time.

Goldman, Sachs & Co. is serving as Ferro's financial advisor, and Jones Day is serving as its legal advisor.

52. Ferro's refusal to engage in a substantive dialogue with A. Schulman, immediately attracted the attention of The Shareholder Committee for the Future of Ferro (the "Committee") - - a group of Company shareholders led by FrontFour Capital Group, LLC ("FrontFour") and Quinpario Partners LLC ("Quinpario") who have spent the last several months lobbying against the Board and Ferro management's running of the Company, even going as far as to engage in a proxy fight, in which the Committee has nominated its own slate of directors for election at the upcoming 2013 Ferro Annual Shareholders Meeting.

53. FrontFour and Quinpario first announced the formation of the Committee in January of 2013 due to concerns regarding the Company's steady decline in share value and consistently unsatisfactory performance of the Board and management. The following open letter to shareholders released on January 24, 2013 expressed these concerns and announced the Committee's intention to nominate its own slate of directors:

Dear Fellow Shareholders:

FrontFour Capital Group LLC and Quinpario Partners LLC, together with their affiliates, are substantial shareholders of Ferro Corporation ("Ferro" or the "Company"). Due to our collective concern about the Company's historic and current under-performance, FrontFour and Quinpario have formed The Shareholder Committee for the Future of Ferro (hereinafter, the "Committee").
The operating performance of the Company continues to deteriorate and the share price as of December 31, 2012 has declined by 15%, 49%, and 79% over the past one, three, and five calendar years, respectively. The ultimate scorecard of any Board of Directors and its management team is the creation of shareholder value. In the case of Ferro, the results speak for themselves, and not in a positive

way. Left to its own devices, and allowed to maintain the status quo, we are concerned that the unsatisfactory past performance of the current Board and its management team is a precursor of further disappointing performance to come. Ferro has reached a critical juncture and further shareholder value must not be destroyed. To this end, the Committee has nominated a slate of highly qualified director nominees, consisting of David A. Lorber, Jeffry N. Quinn and Nadim Z. Qureshi, for election at the 2013 annual meeting of shareholders of the Company. Our nominees are leading executives who have track records of creating shareholder value and will offer new perspective and insights to enhance sustainable long-term value and optimize the business for the benefit of all shareholders.

2013 is a pivotal year for the Company. With a Chief Executive Officer search underway and strategic alternatives being considered for the solar-paste business, many important decisions need to be made. We are concerned that given their poor past performance, the Company's leadership is ill equipped to make the appropriate decisions to restore shareholder value.

The Committee believes that there should be a strategic review of all businesses beyond recent announcements. Management's articulated strategy and its lackluster execution on that strategy have consistently failed to deliver results. Ferro's portfolio of assets is haphazard and illogically structured, the Company's operating margins trail its specialty chemical peers, investments in underperforming businesses have continued to be authorized by the Board, and the Board has continuously approved budgets with excessive SG&A levels. As opposed to actions taken by best in class specialty chemical firms, there has been a consistent lack of response to Ferro's deteriorating performance. It is our view that the solar-paste and pharmaceutical businesses should be sold, immediately. This would allow the Company to streamline its cost structure and bring focus to the remaining core businesses.

With the right leadership and oversight, we believe Ferro can transform and emerge as a formidable specialty chemical company. Therefore, shareholder nominated directors should have a direct involvement in the hiring of an industry leading Chief Executive Officer who will develop and implement a strategic plan to drive shareholder value.

With focus, Ferro can improve and grow its product offering, gain market share, and deliver to its shareholders improved profit margins and cash flow. The opportunity to transform and create value is now.

Sincerely,

/s/ David A. Lorber             /s/ Jeffry N. Quinn
Managing Member                 Chairman and Chief Executive Officer
FrontFour Capital Group         Quinpario Partners LLC
LLC

54.    On February 7, 2013 the Committee addressed another letter to the Company's

shareholders, once again stressing current management's poor performance and lack of effort to

reform key areas such as the Company's cost structure, as well as the need for new leadership.

The letter reads as follows:

> Dear Fellow Shareholders of Ferro Corporation:
>
> The Shareholder Committee for the Future of Ferro (the "Committee"), headed by
> Quinpario Partners LLC and FrontFour Capital Group LLC, has nominated a slate
> of three highly-qualified candidates for election to the board of directors of Ferro
> Corporation ("Ferro" or the "Company") at its 2013 Annual Meeting of
> Shareholders. The Committee's three director nominees are Jeffry N. Quinn,
> David A. Lorber and Nadim Z. Qureshi. The Committee's sole purpose is to
> catalyze change at Ferro that is necessary to create sustainable shareholder value
> through meaningful shareholder representation on the board.
>
> This is a unique campaign and one that is being led by firms with operational,
> strategic, and financial expertise. Quinpario is comprised of experienced
> corporate leaders and managers who have successfully led and operated specialty
> chemical companies. FrontFour is a value oriented investment management firm
> that has a long track record of facilitating change that has led to the creation of
> shareholder value. Importantly, Jeffry N. Quinn of Quinpario has over 25 years
> of experience with industrial companies in the areas of mining, refining and
> chemicals. Over the course of Mr. Quinn's career, especially as the Chairman and
> Chief Executive Officer of Solutia Inc., he has proven himself to be a strong
> operator and creator of shareholder value. Quinpario and FrontFour believe that
> good leadership and management, coupled with strong analysis and execution,
> will ultimately drive shareholder value, and that the creation of shareholder value
> is the measure by which boards and management teams must ultimately be held
> accountable.
>
> We would like to address the Company's announcement on February 6, 2013 of
> the sale of the Solar Pastes Assets along with certain cost savings initiatives. The
> Committee believes the sale of the Solar Pastes Assets was the right
> decision. Unfortunately, this action was taken only after significant wasting of
> company resources and destruction of shareholder value. The impact of the
> deteriorating solar business on shareholder value has been visible for at least the
> last eight quarters. We await meaningful details regarding the transaction.

In addition, the Company needs to formulate and execute a clear and comprehensive plan to effectively cut costs rather than merely issuing press releases stating its intention to do so. We believe Ferro has had a chronically inflated cost structure for years. Despite previous announcements of cost reduction efforts, the inflated cost structure persists. Due to the Company's track record of guidance shortfalls and lack of focus on execution, the Committee believes that meaningful change is necessary at the board level.

Ferro operates several sound businesses with good prospects; however, the Company has been distracted by the solar business while its core businesses have failed to deliver meaningful growth. In our experience, success emanates from within the core; this is a simple management concept that has been demonstrated many times across multiple industries. The Company must refocus on its core and build a sustainable base for the future.

After receiving pressure from the Committee, the current Ferro board and management have only now expressed a sense of urgency to address the Company's cost structure. We reiterate our concern that Ferro's leadership is ill equipped to execute on and achieve even the modest goals it has established. The impact of a legacy of inaction is visible in the Company's share price performance. For this reason, we have put forth a unique and highly qualified slate of individuals who we believe will provide much-needed oversight from an operating, strategic and financial perspective to drive change for the benefit of all shareholders.

Mr. Quinn led the turnaround of Solutia Inc., a global chemical firm located in St. Louis, MO, during the same period of time the Ferro management and board oversaw significant destruction of shareholder value. From May 2004 to July 2012, Mr. Quinn served as the CEO of Solutia and served as the Chairman of the Board from February 2006 to July 2012. Mr. Quinn became CEO of Solutia shortly after it had filed for bankruptcy with a clear mandate to lead a great company with a proud heritage that had lost its way. Upon becoming CEO, Mr. Quinn immediately began implementing an operational turnaround. At that time, Solutia was besieged with legacy liabilities, a portfolio of disparate businesses, an unclear strategy and a loss of focus on technology and operational excellence. Solutia was simply a company in need of change, in need of a new direction, and in need of transformation and revitalization. Over eight years, with the support of a strong board of directors, a motivated globally-oriented management team and dedicated employees, Solutia was able to make the difficult changes that needed to be made to turn around the company. The portfolio of businesses was revamped, the culture was transformed, operational excellence and safety record were improved, and Solutia became a company that had amongst the highest margin profiles in the chemical industry. The similarities between Ferro today and Solutia in 2004 are striking.

The Committee believes that the ultimate job of a board is to work with management to maximize the operating potential of a company and drive shareholder value. During Mr. Quinn's tenure at Solutia, he and his board did just that as the operational turnaround led to a dramatic improvement in operating results and significant shareholder value was created. Solutia was able to weather the recession of late 2008 into early 2009 and ultimately the company was sold to Eastman Chemical in July 2012 for $4.7 billion. From the low point of its share price in March 2009, Solutia was able to achieve an over 1,800% increase in its share price. Ultimately, the shareholders were well served, the business is now in good hands for the long term benefit of Solutia's customers and great opportunities have been created for the employees.

We believe there is a significant value creation proposition for all shareholders. But change is needed to unlock that value opportunity. Over the coming weeks, we will be communicating details about our vision for Ferro. Our plan for Ferro will focus on bringing the Company's cost structure in line with best in class companies, optimizing the portfolio of assets so the Company can focus on growing and developing its core businesses and putting the Company on a path towards operational excellence.

Immediate change is needed at Ferro. With a properly constituted board, we believe sustainable shareholder value can be created.

Sincerely,

/s/David A. Lorber    /s/ Jeffry N. Quinn
Managing Member    Chairman and Chief Executive Officer
FrontFour Capital    Quinpario Partners LLC
Group LLC

55.    On February 20, 2013 the Committee filed a Form 14A with the SEC seeking support from shareholders to take action in ousting incumbent Board members and replacing these members with the Committee's slate of directors.

56.    On March 7, 2013 the Committee issued another press release criticizing the Company's continued poor performance as well as the Board's treatment of the Offer. In this press release, the Committee cited the Board's summary rejection of the Offer as an attempt to entrench themselves as the Company's leadership. The Committee also condemned the Board's openness regarding the process and reasoning utilized to reach the decision not to engage in negotiations with A. Schulman. As stated in the press release:

### *Ferro's summary rejection of A. Schulman's offer to acquire the Company suggests that the Board may be seeking to entrench itself*

On March 4, 2013, A. Schulman, a leading international supplier of high-performance plastic compounds and resins with product lines and business models similar to those of Ferro, announced that it made a proposal to acquire all the outstanding shares of the Company for $6.50 per share (to be paid half in cash and half in shares of A. Schulman stock)

While we do not believe the offer fully values Ferro, the manner in which the Ferro Board summarily rejected the offer without appearing to have engaged A. Schulman and attempting to negotiate a higher price speaks volumes. According to A. Schulman, it expressed its "strong intent" in pursuing the combination in a letter to Ferro on February 13, 2013 and stated that, with greater visibility into Ferro's business, its offer could be adjusted subject to customary due diligence. The Ferro Board subsequently rejected the offer and never publicly disclosed A. Schulman's overtures to the public, which appear to have commenced as early as November 2012. Had the best interests of shareholders been a priority to the Ferro Board, we believe it would have at the very least attempted to engage in meaningful discussions with A. Schulman in order to negotiate a higher price that would maximize shareholder value. After all, what would be the harm in entering into discussions with A. Schulman? While we do not view A. Schulman's current offer as adequate, shutting the door on this offer within only two weeks after its submission without entering into a meaningful dialogue with A. Schulman suggests entrenchment which simply will not be tolerated by the shareholders. The Committee supports the Company fully exploring the potential sale of Ferro at a price that fully and fairly values the Company, whether to A. Schulman or any other potential acquirer.

\* \* \* \*

### *The manner in which Ferro conducted its earnings call had the effect of silencing shareholders*

Representatives of the Committee and other shareholders and analysts of Ferro dialed into the March 5 earnings call with the expectation that management would address various questions we all had regarding the Company's financial results and A. Schulman's acquisition proposal. We were shocked when management stated in the beginning of the call that it would forego a Q&A session and would instead contact investors and analysts after the call to discuss any questions they may have. To add insult to injury, the only information management gave regarding the A. Schulman offer was confirmation that it had received it, that the Ferro Board unanimously determined that the offer is not in the best interest of shareholders and that continued execution of the Company's strategy outlined during the call will deliver greater value to shareholders. There was no discussion regarding the specific reasons why management did not think the offer was

adequate, why it did not seek to engage in negotiations with A. Schulman to increase its bid or why it never publicly disclosed the offer to shareholders.

Ferro's decision not to have a Q&A session is inexcusable. Management clearly had an expectation that shareholders would have numerous questions regarding the financial results, the sale of the solar pastes assets and the A. Schulman proposal and brazenly bypassed their questions without any notice or explanation. How can management be held accountable if it refuses to engage in discussions with shareholders? What is Ferro trying to hide? Stating that it will call shareholders "over the coming days and weeks" does little to engender a sense of trust that management is willing to seriously consider the concerns of shareholders or hold itself accountable for its actions. For the record, we have not heard from Ferro and await their call.

57. Defendants have refused to negotiate with A. Schulman or open up a broader sales process to secure competing bids for the Company that would maximize shareholder value. The offer price of $6.50 per share represents a substantial premium to the trading price of Ferro common stock. The Offer represents a 25 percent premium over the closing price of Ferro common stock on March 1, 2013, and a 32 percent premium over the volume-weighted average trading price over the preceding 60-day period.

58. Negotiating with A. Schulman and allowing them access to due diligence could lock in this premium, or possibly even increase this premium to the benefit of Ferro shareholders. As of March 15, 2013, Ferro has still not permitted A. Schulman to conduct any such due diligence.

59. The Individual Defendants as fiduciaries to shareholders, have the responsibility to vigorously pursue this opportunity to maximize shareholder value especially in light of the already significant premium offered by A. Schulman. The Individual Defendants have refused to negotiate with A. Schulman, and have done so to protect their own positions.

### *The Staggered Board is a Barrier Erected by the Board*

60.     In their continued efforts to thwart the possibility of a value-maximizing transaction for Ferro stockholders, the Individual Defendants have erected barriers such as a staggered board and have chosen to utilize these defensive measures in order to preserve their positions at the Company.

61.     The Company's Articles of Incorporation also provide for a staggered board of directors. The Company's staggered board is an additional entrenchment measure that makes it almost impossible for any potential acquirer, such as A. Schulman, to take control of the Company, even by waging a proxy fight. The staggered board allows defendants to protect two-thirds of the Board from having to stand for re-election by shareholders in any given year. Thus, to replace the Board via a proxy fight, a potential acquirer must win two consecutive shareholder elections, a feat so costly that it would be extremely difficult for any would-be acquirer to realistically accomplish.

62.     In a March 4, 2013 article published at cleveland.com, the author describes the difficulties A. Schulman would face if it attempted to elect its own nominees to the Company's Board:

> Ohio law gives Ferro's board a lot of control over the situation. If the board rejects the deal, Johnson said all that Schulman and dissident shareholders can do is buy enough stock to put its own members on the board of directors.
>
> Getting enough directors on the board to swing the vote could take years as Ferro's board terms are staggered. Instead of electing an entire slate of directors each year, shareholders vote on three members at a time each year. So winning a board majority could take two years.
>
> Don Margotta, a finance professor who has written extensively about hostile takeovers at Northeastern University in Boston, said that staggered board structure "is very effective in fighting off takeovers, or at least slowing them down."

On top of that, Margotta said, are Ohio laws that prevent investors from buying more than 20 percent of a company without permission from other shareholders. That law could stop Schulman from getting enough votes to win seats on Ferro's board.

63.     In addition, the Company's Bylaws set forth that no director may be removed except for cause, and, pursuant to the Company's Articles of Incorporation, the staggered board provision may not be altered without a supermajority vote of all shareholders. Such a staggered board is known in takeover parlance as an "Effective Staggered Board" ("ESB"), because shareholders lack the effective power to terminate its existence.

64.     The ESB forms a nearly insurmountable defensive barrier that precludes any attempt to purchase the Company. Because the ESB makes it extremely difficult and cost-prohibitive for any would-be acquirer such as A. Schulman to replace the Board via a proxy fight, no proposal to purchase the Company can be successful without the Individual Defendants' approval.   The Individual Defendants have held and are holding the Company and its shareholders hostage for the benefit of defendants.

### FIRST CAUSE OF ACTION
### Class and Derivative Claim for Breach of Fiduciary Duties
### Against All Defendants

65.     Plaintiff repeats and realleges each allegation as though fully set forth herein. Plaintiff brings this claim derivatively on behalf of Ferro and directly on behalf of himself and all other Class members.

66.     The Individual Defendants failed to act reasonably or in good faith in an effort to maximize shareholder value. Rather, the Individual Defendants have taken actions designed to impede the maximization of shareholder value in order to allow the Individual Defendants to

retain their control over and emoluments associated with their positions as directors and/or senior insiders of Ferro.

67.     The Individual Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Ferro and its public shareholders and have acted to put their personal interests ahead of the interests of Ferro shareholders.

68.     The Individual Defendants were and are under a duty to:

(a)     fully  inform themselves of the market value of Ferro before taking, or agreeing to refrain from taking, action;

(b)     act in the best interest of Ferro and its shareholders; and

(c)     act in accordance with their fundamental duties of due care, good faith, loyalty and candor.

69.     The Individual Defendants have violated their fiduciary duties by failing to give reasonable and good faith consideration to alternatives to maximize shareholder value. The Individual Defendants directly breached and/or aided and abetted the other Individual Defendants' breaches of fiduciary duties to Ferro and the public stockholders of Ferro.

70.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Ferro because, among other reasons, they failed to properly and adequately consider offers to purchase Ferro and take other necessary steps to maximize the value of Ferro to its public shareholders.

71.     The Individual Defendants dominate and control the business and corporate affairs of Ferro, and are in possession of private corporate information concerning Ferro's assets (including the knowledge during the relevant period of other possible undisclosed bids for the

Company), business and future prospects. Therefore, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Ferro which makes it inherently unfair for them to reject any proposed transactions or strategic alternatives for the Company for the sole purpose of entrenching themselves as directors of the Company to the exclusion of maximizing shareholder value.

72. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise care and diligence in the exercise of their fiduciary obligations toward the Company, plaintiff and the other members of the Class.

73. The Individual Defendants are engaging in self dealing, are not acting in good faith toward plaintiff and the other members of the Class, and knowingly or recklessly have breached and are continuing to breach their fiduciary duties owed to the Company and members of the Class.

74. Each of the Individual Defendants has knowingly participated in the unlawful conduct, alleged herein in order to advance his or her own economic interests, or the interests of friends and colleagues, to the detriment of Ferro and its shareholders.

75. By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, on their own and as part of a common plan, and in breach of their fiduciary duties to Ferro shareholders, are engaging in acts that will irreparably harm the Company and/or its shareholders.

76. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Ferro.

77.    As a result of the Individual Defendants' unlawful actions, Ferro and its public shareholders are being and will be irreparably harmed.   Unless the Individual Defendants' actions are enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Ferro and Ferro shareholders and will continue to engage in a process that harms Ferro and its shareholders and inhibits the maximization of shareholder value.

**SECOND CAUSE OF ACTION**
**Derivative Claim for Abuse of Control**
**Against All Defendants**

78.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

79.    The Individual Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Ferro, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Ferro. As part of this scheme, the Individual Defendants erected unreasonable and draconian defensive barriers to prevent potential offers for the Company.

80.    The Individual Defendants' conduct constituted an abuse of their ability to control and influence Ferro.

81.    By reason of the foregoing, Ferro has been damaged.

**THIRD CAUSE OF ACTION**
**Derivative Claim for Gross Mismanagement**
**Against All Defendants**

82.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

83.    The Individual Defendants had a duty to Ferro and its shareholders to prudently supervise, manage and control the operations and business of Ferro.

84.    The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of Ferro in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, The Individual Defendants breached their duties of due care, diligence and candor in the management and administration of Ferro and in the use and presentation of Ferro's assets.

85.    During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet defendants caused Ferro to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Ferro, thus breaching their duties to the Company. As a result, the Individual Defendants grossly mismanaged Ferro.

86.    By reason of the foregoing, Ferro has been damaged.

### FOURTH CAUSE OF ACTION
### Derivative Claim for Corporate Waste
### Against All Defendants

87.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.    By failing to properly consider the interests of the Company and its public shareholders the Individual Defendants have caused Ferro to waste valuable corporate assets.

89.    As a result of the Individual Defendants' corporate waste, they are liable to the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands preliminary and permanent relief, including injunctive relief, as follows:

A.     Declaring that this action is properly maintainable as a class and derivative action;

B.     Declaring and decreeing that the Individual Defendants' conduct has been in breach of the fiduciary duties owed by the Individual Defendants to Ferro and its public shareholders;

C.     Declaring and decreeing that the Individual Defendants' refusal to consider in good faith potential value-maximizing opportunities for the Company and its shareholders is in breach of the fiduciary duties owed by defendants to Ferro and its shareholders and ordering defendants to comply with said fiduciary duties;

D.     Directing the Individual Defendants to refrain from advancing their own interests at the expense of Ferro or its shareholders and exercise their fiduciary duties to act reasonably and respond in good faith to offers which are in the best interest of Ferro and its shareholders;

E.     Directing the Individual Defendants to establish a committee of truly independent directors, evaluate strategic alternatives and potential offers for the Company, and to take decisive steps to maximize shareholder value;

F.     Prohibiting the Individual Defendants from entering into any contractual provisions which harm Ferro or its shareholders or prohibit defendants from maximizing shareholder value;

G.    Directing the Individual Defendants to rescind any preclusive defensive measures implemented by the Company and restraining defendants from adopting, implementing or instituting any defensive measure that has or is intended to have the effect of making the consummation of an offer to purchase the Company more difficult or costly of a potential acquirer;

H.    Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts fees; and

I.    Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Phillip A. Ciano (#0066134)
Andrew S. Goldwasser (#0068397)
Ciano & Goldwasser, L.L.P.
101 Prospect Avenue, W.
1610 Midland Building
Cleveland, Ohio 44115
Telephone: (216) 658-9900
Facsimile:  (216) 658-9920
E-mail: pac@c-g-law.com/asg@c-g-law.com

/s/ Shane Rowley (per consent)
Joseph Levi, Esq.
Shane Rowley, Esq.
Levi & Korsinsky, LLP*
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
E-mail: jlevi@zlk.com/srowley@zlk.com

*Attorneys for Plaintiff*

**\*Motions for *Pro Hac Vice* Pending**

## <u>VERIFICATION</u>

I, David Raul as Custodian for Pinchus E. Raul UTMA NY, do hereby verify that I have read the foregoing Verified Shareholder Class and Derivative Complaint for Breach of Fiduciary Duty, Abuse of Control, Gross Mismanagement and Corporate Waste; and that the factual allegations contained within are true and correct to the best of my personal knowledge, information and belief.

_____

DAVID RAUL